

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **CANDICE WADE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00896-LCB** |
| | ) | |
| **COLBERT ANIMAL SERVICES,** | ) | |
| **COLBERT COUNTY,** | ) | |
| **CITY OF TUSCUMBIA,** | ) | |
| **CITY OF MUSCLE SHOALS,** | ) | |
| **CITY OF SHEFFIELD,** | ) | |
| **STEVEN HIGGINBOTHAM,** | ) | |
| **WILLIAM MURNER,** | ) | |
| **YOLONDA JONES,** | ) | |
| **CHARLES COREY SPEEGLE,** | ) | |
| **JESSICA HOGAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**JOINT BRIEF IN SUPPORT OF MOTIONS TO DISMISS
OF DEFENDANTS CITY OF MUSCLE SHOALS, ALABAMA,
<u>AND CITY OF SHEFFIELD, ALABAMA</u>**

Defendants City of Muscle Shoals, Alabama ("Muscle Shoals"), and City of

Sheffield, Alabama ("Sheffield") jointly submit this brief in support of their pending

motions to dismiss the complaint filed against them by plaintiff Candice Wade.

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this action on July 8, 2024, by filing a fourteen-count

complaint in this Court, naming as defendants: Colbert Animal Services ("CAS");

Colbert County, Alabama ("Colbert County"); City of Tuscumbia, Alabama

("Tuscumbia"); Muscle Shoals; Sheffield; Captain Steven Higginbotham ("Captain Higginbotham"); Investigator William Murner ("Investigator Murner"); Yolanda Jones ("Jones"); Charles Corey Speegle ("Speegle"); and Jessica Hogan ("Hogan").

Plaintiff tenders only a single claim against Muscle Shoals and Sheffield in Count I of the complaint. In Count I, Plaintiff asserts a claim for class injunctive relief on behalf of herself and all persons issued a Uniform Non-Traffic Citation and Complaint ("UNTCC") by CAS. The claim is asserted against CAS, Colbert County, Tuscumbia, Muscle Shoals, and Sheffield pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff alleges the issuance of UNTCCs by CAS employees, who were not certified by the Alabama Peace Officers Standards & Training Commission ("APOSTC"), is an unlawful seizure under the Fourth Amendment. (Doc. 1 ¶¶ 20, 129). Plaintiff further alleges that Colbert County, Muscle Shoals, Sheffield, and Tuscumbia "each had an official policy, practice, or custom under which they used CAS to enforce laws and city ordinances by issuing UNTCCs, including but not limited to those for the prevention of animal cruelty, animal control and animal-related public health—rabies immunizations." (*Id.* ¶ 119). Plaintiff seeks class injunctive relief to prohibit the issuance of UNTCCs by CAS, the restructuring of defendants' animal-related law enforcement, and other injunctive relief for violations of the class's Fourth Amendment rights. (*Id. ad damnum* clause).

2

The sole claim against Muscle Shoals and Sheffield in Count I fails and is due to be dismissed for reasons discussed herein. First, Plaintiff lacks standing to pursue her claims for injunctive relief against Muscle Shoals and Sheffield because she fails to allege a real and immediate threat of future injury or that the alleged harm is fairly traceable to any policy, practice, or custom of Muscle Shoals or Sheffield. Second, the alleged violations of state law do not give rise to a claim under the Fourth Amendment, and Plaintiff fails to plausibly allege Muscle Shoals or Sheffield demonstrated deliberate indifference to any federal constitutional rights. Third, Plaintiff has failed to plausibly allege a claim against Muscle Shoals or Sheffield because she has not alleged a custom or practice of issuing UNTCCs without probable cause, and neither Muscle Shoals nor Sheffield effected Plaintiff's arrest or issued the UNTCCs. Thus, all claims against Muscle Shoals and Sheffield in the complaint are due to be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

At this stage in the proceedings, Muscle Shoals and Sheffield take as true all well-pleaded allegations in Plaintiff's complaint. Rather than burden the record with a complete restatement of those allegations here, Muscle Shoals and Sheffield will incorporate any material facts alleged by Plaintiff, if necessary, in the argument section of this brief. Because many of Plaintiff's allegations are disputed, Muscle Shoals and Sheffield reserve the right to contest any or all of them at any later

proceeding in this case. Any recitation of Plaintiff's allegations in this brief should not be construed as an admission by Muscle Shoals or Sheffield that such allegations are accurate, complete, or have evidentiary support.

## III.   STANDARD OF REVIEW

Rule 12(b)(6) of the *Federal Rules of Civil Procedure* provides the vehicle through which defendants may seek dismissal of any claim failing to state a basis upon which relief can be granted. To avoid dismissal, a complaint must provide a short, plain statement of each claim showing plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). This provides defendants with fair notice of what the claim is and the grounds upon which it rests. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . .."). Dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the . . . action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Importantly, a complaint must establish more than a sheer possibility a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 556). "Where a complaint pleads facts . . . 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief' [as contemplated by rule 8(a)(2)]." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.   ARGUMENT

### A.   Plaintiff Lacks Standing Because She Fails to Allege a Real and Immediate Threat of Future Injury or That the Alleged Harm Is Fairly Traceable to Any Policy, Practice, or Custom of Muscle Shoals or Sheffield.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is subject to dismissal if the Court lacks subject matter jurisdiction. Standing is a jurisdictional issue, *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994), and "a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). When the Court's subject matter jurisdiction is challenged, the plaintiff bears the burden of demonstrating that he or she has Article III standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). Because standing "is not dispensed in gross," a "plaintiff must demonstrate standing for each claim and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citations and internal quotation marks omitted).

For a class action to be justiciable, "'a **named** plaintiff [must] have standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) (emphasis in original); *see also Spokeo*, 578 U.S. at 338 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."). Stated differently, "[w]here . . . the plaintiffs seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008))).

Importantly, a claim in a class action lawsuit is subject to dismissal if the named plaintiff does not have standing to bring the claim. *See Doss v. Gen. Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020) (affirming the dismissal of a class action lawsuit because the named plaintiff did not have standing)*; Sanchez-Knutson v. Ford*

6

*Motor Co.*, No. 14-61344-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 181103, at *8 (S.D. Fla. July 21, 2015) ("As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature.").

In this case, Plaintiff is the sole named plaintiff in a putative class action lawsuit, asserting multiple claims against several defendants, including a claim for injunctive relief against Muscle Shoals and Sheffield. As the named plaintiff, she bears the burden of demonstrating that she has standing to pursue this claim. However, Plaintiff fails to establish the necessary standing to bring a claim against Muscle Shoals or Sheffield. Without standing, there is no justiciable controversy before the court, and as such, the claim against Muscle Shoals must be dismissed as a matter of law.

    **1.**    **Plaintiff's claim for injunctive relief fails as a matter of law because she has not plausibly alleged a threat of "real and immediate future injury."**

Plaintiff does not have standing to seek injunctive relief against Muscle Shoals or Sheffield because she has not plausibly alleged in her complaint a threat of "real and immediate future injury." Thus, Plaintiff has not pleaded a sufficient "injury-in-fact" that would be redressable by injunctive relief. Consequently, she lacks standing for her claims of injunctive relief against Muscle Shoals and Sheffield.

The three requirements for a plaintiff to have standing are:

7

(1) the plaintiff has suffered an "injury in fact"—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there be a causal connection between that injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it be likely, not merely speculative, that the injury will be redressed by a favorable decision.

*Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). For claims for prospective relief, such as injunctive relief, the plaintiff does not have standing unless she can demonstrate "that an injury is likely to occur immediately[.]" *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003), *superseded on other grounds by statute*, 42 U.S.C. § 671(a)(16) (requiring state provision of foster care "case review system which meets the requirements described in section[] 675(5)"). Even if the plaintiff demonstrates immediacy, "the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural." *Corbett*, 930 F.3d at 1233 (citing *Fla. State Conference of N.A.A.C.P.*, 522 F.3d 1153, 1161 (11th Cir. 2008)); *see also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1247 (11th Cir. 2023) ("'Because injunctions regulate future conduct, a party has standing to seek injunctive relief' only if his injury in fact is 'a real and immediate—as opposed to a merely conjectural

or hypothetical—threat of **future** injury." (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001))); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000) (reasoning that a "perhaps" or "maybe" chance that an injury will occur is not enough to give plaintiffs standing). This additional requirement for claims for injunctive relief is relevant to both the elements of "injury-in-fact" and "redressability." *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (explaining that "[t]he 'injury-in-fact' demanded by Article III requires an additional showing" by the plaintiff that "he will be affected by allegedly unlawful conduct in the future"); *see also Malik v. United States Dep't of Homeland Sec.*, 78 F.4th 191, 198 (5th Cir. 2023) ("[P]laintiffs seeking injunctive . . . relief can satisfy the redressability requirement only by demonstrating a **continuing** injury or threatened **future** injury.").

The single count in Plaintiff's complaint asserted against Muscle Shoals and Sheffield is Count I, which seeks injunctive relief against these municipalities as well as other defendants. (Doc. 1 ¶¶ 113–138). Specifically, Plaintiff asks the Court for a permanent injunction against CAS employees' issuance of UNTCCs and a restructuring of the defendants' animal-related law enforcement. (*Id.* at ¶ 138). However, the injunctive relief sought in this case is far too speculative to allege a case or controversy susceptible to adjudication by this Court.

9

The United States Supreme Court specifically foreclosed any possibility of prospective relief based solely on past conduct without a substantial showing of the likelihood future injury in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff filed a complaint in federal court against the City of Los Angeles and four of its police officers, alleging that he was stopped by the defendant officers for a traffic violation and was placed in a chokehold. *Id.* at 97. Among other relief, the plaintiff sought a preliminary and permanent injunction against Los Angeles barring the use of "control holds" like the hold applied to him. *Id.* at 98. The Court found that the plaintiff failed to demonstrate a case or controversy that would justify injunctive relief, reasoning:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, **does nothing to establish a real and immediate threat** that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force **falls far short** of the allegations that would be necessary to establish a case or controversy between these parties.

*Id.* at 105. In short, the Supreme Court determined that it was no more than "conjecture" and "speculation" that the plaintiff would find himself in a similar situation and be subjected to a chokehold without provocation, or that "every

instance of a traffic stop, arrest, or other encounter between the police and a citizen" would end in with the same use of force. *Id.* at 108. The Court reasoned that, "[a]bsent a sufficient likelihood that [the plaintiff would] again be wronged in a similar way," the plaintiff "[was] no more entitled to an injunction than any other citizen of Los Angeles." *Id.* at 111. Overall, the Court found that the plaintiff lacked standing to pursue injunctive relief against the City of Los Angeles. *Id.*

The United States District Court for the Northern District of Alabama reached a similar conclusion in *Guidry v. JP Morgan Chase Bank, N.A.*, No. 2:20-cv-01618-ACA, 2021 U.S. Dist. LEXIS 163707 (N.D. Ala. Aug. 30, 2021). In *Guidry*, the plaintiff's car was being repossessed by a repossession company when he called the police to complain that the individual repossessing his car was trespassing on his property. *Id.* at *1–2. After the police arrived, the plaintiff was arrested for disorderly conduct for refusing to turn the vehicle over. *Id.* at *2. The plaintiff subsequently filed suit against multiple defendants. *Id.* In his complaint, the plaintiff asserted a claim pursuant to section 1983 against the sheriff in his official capacity, seeking prospective injunctive relief. *Id.* at *29. The plaintiff alleged that the sheriff maintained a policy or custom of assisting private repossession companies with self-help repossessions resulting in unlawful searches and seizures. *Id.* at *22, *30. The sheriff moved to dismiss the plaintiff's claims against him. *Id.* at *1. The court, *sua sponte*, examined whether the plaintiff had standing to assert the claim for injunctive

11

relief against the sheriff. *Id.* at *29–32. The court determined that the plaintiff's complaint did not allege facts plausibly showing that he is subject to a real and immediate threat of future injury, reasoning:

> The only allegation in the amended complaint that bears on potential future injury is that "what befell" Mr. Guidry "is capable of repetition." But this conclusory statement without factual support is not entitled to a presumption of truth. **Mr. Guidry has not alleged that he owns another car subject to private repossession such that sheriff's deputies would have an opportunity to actively assist in an unlawful private repossession of one of his vehicles in the future.** Accordingly, Mr. Guidry has not alleged a "sufficient likelihood that he will be wronged again in a similar way."

*Id.* at *32 (internal citations omitted) (emphasis added). Therefore, the court dismissed the claim for injunctive relief against the sheriff for lack of standing. *Id.*

Here, Plaintiff lacks standing to seek injunctive relief against Muscle Shoals or Sheffield because she has failed to demonstrate a threat of "real and immediate future injury." The only injury alleged in her complaint is a past violation of her Fourth Amendment rights, which she claims occurred when she was issued two UNTCCs and subsequently arrested on August 8, 2023—neither of which is attributable to Muscle Shoals or Sheffield. However, past harm alone is insufficient to confer standing for injunctive relief. To establish such standing, Plaintiff must show that she is likely—not merely possibly—going to suffer future harm from the same party or under similar circumstances. This she cannot do.

12

Crucially, Plaintiff does not allege any likelihood that she will encounter Colbert Animal Services ("CAS") again or be issued a UNTCC by its personnel in the future. Tellingly, she fails to allege that she has ownership, possession, or responsibility for any animal such that it is likely that she will even encounter CAS personnel ever again. On the contrary, she disclaims any such ownership or responsibility. (See Doc. 1 ¶ 60). Moreover, there is no real or immediate threat to the future where, as here, the event that would trigger the potential future harm would be Plaintiff's decision to violate the law such that a UNTCC would be necessary. *See, e.g.*, *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1162 (11th Cir. 2008) (noting the Supreme Court has "voiced its hesitance to assume that the plaintiff will routinely violate the law in the future and thus be brought within arms' reach of the police"); *Kuykendall v. Marshall*, No. 1:20-CV-00797-SGC, 2021 WL 1171629, at *3 (N.D. Ala. Mar. 29, 2021) (finding plaintiff failed to plead sufficient facts to establish standing for federal action to declare Alabama statute unconstitutional and enjoin state court proceedings).

While Plaintiff broadly alleges that CAS routinely issues UNTCCs, this generalized assertion is insufficient under the precedents set by *Lyons* and *Guidry*. In those cases, the courts clarified that, for a plaintiff to establish a "case" or "controversy" for injunctive relief, she must show that she herself faces a substantial likelihood of suffering the same harm again—such as receiving another UNTCC or

13

being arrested for an animal-related offense. Although Plaintiff contends that CAS has issued over 150 UNTCCs within Colbert County (Doc. 1 ¶ 111), she does not allege that these citations are issued so frequently that it is likely she will personally receive another one, especially without any allegations that she owns an animal and is particularly subject to receiving a UNTCC from CAS. Without any specific and concrete allegation of a "real and immediate" threat of future injury, Plaintiff cannot meet the standing requirements necessary to pursue her claim for injunctive relief against Muscle Shoals or Sheffield. *See, e.g.*, *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (finding plaintiffs lacked standing for injunctive and declaratory relief relating to City's policy regulating use of police canines since they could not show that they would necessarily be unlawfully seized by one of the City's police dogs in the future); *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1265 (11th Cir. 2018) (holding the plaintiff lacked standing to seek declaratory and injunctive relief relating to the use of a chemical spray because there was no "real and immediate threat that she would be subjected to excessive force" by the use-of-spray policy).

Thus, in the absence of any well-pleaded facts indicating a real, immediate, and credible risk of future harm, Plaintiff's claim for injunctive relief must fail.

> **2. Additionally, Plaintiff's claim for injunctive relief fails as a matter of law because the alleged injury is not "fairly traceable" to any policy, practice, or custom of Muscle Shoals or Sheffield.**

Not only is Plaintiff's request for injunctive relief in this case too speculative to support standing, but Plaintiff also has not sufficiently alleged how any injury to her is fairly traceable to some action of Muscle Shoals or Sheffield rather than an independent action of another party. *See Corbett*, 930 F.3d at 1232; *Lujan*, 504 U.S. at 560–61. For traceability, the plaintiff's injury must be traced to "'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Louis v. Bluegreen Vacations Unlimited, Inc.*, No. 22-12217, 2024 U.S. App. LEXIS 13925, at *7 (11th Cir. June 7, 2024) (quoting *Collins v. Yellen*, 594 U.S. 220, 243 (2021); *see also Lujan*, 504 U.S. at 560  (explaining that the plaintiff must show "a causal connection between the injury and the conduct complained of," and that "the injury has to be fairly traceable to the challenged action of the defendant") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)). For an injury to be "fairly traceable" to the defendant's actions, there must be "clear links in the chain of causation[.]" *Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*, 884 F. Supp. 487, 490 (S.D. Fla. 1994) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "'The line of causation between the [alleged] illegal conduct and injury' must not be 'too attenuated.'" *City of Birmingham v. Citigroup Inc.*, No. CV-09-BE-

467-S, 2009 U.S. Dist. LEXIS 123123, at *9 (N.D. Ala. Aug. 19, 2009) (quoting *Allen*, 468 U.S. at 752).

The Eleventh Circuit found that the plaintiffs' injuries were "fairly traceable" to a defendant's alleged unlawful conduct in *Debernardis v. IQ Formulations, Ltd. Liab. Co.*, 942 F.3d 1076 (11th Cir. 2019). In *Debernardis*, the plaintiffs alleged that they purchased from the defendant some dietary supplements that were banned from sale by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*. The District Court dismissed the plaintiff's claims against two defendants, finding that the plaintiffs suffered no injury and thus lacked standing. On appeal, the Eleventh Circuit found that the plaintiffs alleged sufficient facts that they suffered an injury in fact because they were deprived of the entire benefit of their bargain with the defendants. *Id.* at 1088. One defendant, Europa, argued that the plaintiffs' alleged injuries were not traceable to the defendant's conduct because they never alleged that Europa distributed any of the supplements that were purchased. *Id.* The Eleventh Circuit rejected the defendant's argument, concluding that the factual allegations supported an inference that the defendant distributed the supplements that were purchased by the plaintiff. *Id.* The court stated:

> The complaint alleged that only two entities supplied the supplements to consumers: IQ and Europa. IQ, the manufacturer, never distributed supplements to retailers, although it did sell supplements directly to consumers through its website. IQ relied

on Europa to deliver its supplements to retailers, who sold the products to consumers. According to the complaint, the retailers that Europa supplied included Walgreens and NaturalBodyInc.com. The plaintiffs alleged that that Debernardis purchased IQ's supplements from Walgreens through its website and Damore purchased IQ's supplements from NaturalBodyInc.com. As the sole distributor that supplied supplements to retailers, only Europa could have provided the supplements the plaintiffs bought.

*Id.* at 1088–89. Therefore, the court vacated the decision of the District Court and held that the plaintiffs had standing to proceed with their claims. *Id.* at 1089.

However, and as applicable here, the United States Supreme Court reached the opposite conclusion in *Allen v. Wright*, 468 U.S. 737 (1984). and determined plaintiffs did not have standing to proceed with their claim. *Id.* at 752. In *Allen*, parents of Black public-school students filed a nationwide class action suit against the United States Secretary of the Treasury and the Commissioner of Internal Revenue, alleging that the Internal Revenue Service had not adopted sufficient standards and procedures to fulfill its obligation to deny tax-exempt status to racially discriminatory private schools. *Id*. at 739. The defendants moved to dismiss the complaint for lack of standing, which the District Court granted. *Id.* at 748. The Court of Appeals reversed, concluding that the plaintiffs had standing to maintain the suit. *Id.* On writ of certiorari, the Supreme Court reversed the holding of the Court of Appeals and held that the plaintiffs did not have standing to bring the suit.

17

*Id.* at 766. In reaching its conclusion, the Court reasoned that the plaintiffs' injury was not fairly traceable to the alleged unlawful conduct on the part of the defendants, stating that "[t]he line of causation" between the defendants' alleged unlawful conduct and the "desegregation of respondents' schools" was "attenuated at best." *Id.* at 757.

In this case, Plaintiff claims that CAS was established as a joint venture of Colbert County, Muscle Shoals, Sheffield, and Tuscumbia. (Doc. 1 ¶ 26). In a conclusory fashion, she alleges that Muscle Shoals and Sheffield engaged in unlawful conduct by having an official policy, practice, or custom of using CAS to enforce laws and city ordinances, including those related to animal cruelty prevention, animal control, and rabies immunizations. (*Id.* at ¶ 119). Although she alleges that Muscle Shoals and Sheffield have some financial involvement in CAS, and that each city's mayor served on CAS's Board of Directors (*id.* at ¶ 107), she never alleges how she has been injured by Muscle Shoals or Sheffield in the past or how some action of these particular municipalities will harm her in the future to justify injunctive relief against them. To be sure, Plaintiff expressly alleges that she is a resident of Tuscumbia—not Muscle Shoals or Sheffield. (Doc. 1 ¶ 3). Likewise, she alleges that she was arrested at her home in Tuscumbia and by Tuscumbia police officers. (*See id.* at ¶¶ 71–85). Accordingly, Plaintiff's alleged injury cannot be traced to any policy, practice, or custom attributable to Muscle Shoals or Sheffield.

18

The conduct at issue occurred entirely within Tuscumbia and was not affected by any action or policy of Muscle Shoals or Sheffield, including their alleged relationship with CAS.

Plaintiff attempts to implicate Muscle Shoals and Sheffield by claiming CAS was associated with these municipalities as part of a joint venture; however, the complaint fails to sufficiently allege that any policy, practice, or custom of Muscle Shoals or Sheffield was the proximate cause of her injury. Unlike in *Debernardis*, where the complaint supported an inference of direct involvement, the allegations here do not plausibly suggest that Muscle Shoals or Sheffield played any active or direct role in shaping Tuscumbia's law enforcement policies. Plaintiff does not demonstrate any causal connection between the purported utilization of CAS by Muscle Shoals and Sheffield and the events that transpired entirely within Tuscumbia's jurisdiction.

Any semblance of causal connection alleged here is "attenuated at best," which erodes traceability and thus standing. *Allen*, 468 U.S. at 757. Plaintiff's claim hinges on an unsupported and unreasonable inference that Muscle Shoals and Sheffield exerted influence over Tuscumbia's independent decision-making regarding law enforcement practices and the issuance of UNTCCs by CAS. There is no basis to conclude that Muscle Shoals or Sheffield had any control or influence over Tuscumbia's actions. Plaintiff's injury is thus not "fairly traceable" to any

19

allegedly unlawful conduct by Muscle Shoals or Sheffield, as required by standing doctrine. The causal link, if any, is far too tenuous to satisfy this essential element.

In light of the foregoing, Plaintiff's claims against Muscle Shoals and Sheffield are due to be dismissed, as the complaint fails to plausibly allege an actionable connection between the conduct of Muscle Shoals or Sheffield and the alleged injury.

**B.    Plaintiff's Allegations of State Law Violations Fail to Establish Any Viable Section 1983 Claim Against Muscle Shoals or Sheffield.**

Beyond Plaintiff's lack of standing, the complaint is due to be dismissed against Muscle Shoals and Sheffield since it fails to state a plausible claim upon which relief may be granted. Plaintiff's § 1983 claims against Muscle Shoals and Sheffield are not maintainable since alleged violations of state law regarding the issuance of UNTCCs do not implicate the violation of a federally protected right.

Section 1983 creates a remedy not for "every wrong" committed under the color of state law, but "only for those that deprive a plaintiff of **a federal right**." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (emphasis added) (citing *Paul v. Davis*, 424 U.S. 693, 698–99 (1976)). Furthermore, "there is no federal right not to be arrested in violation of state law." *Id.* (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that federal law, not state law, determines the validity of arrests under the Fourth Amendment); *Barry v. Fowler*, 902 F.2d 770,

772 (9th Cir. 1990) (same); *McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984) (same); *Street v. Surdyka*, 492 F.2d 368, 370–73 (4th Cir. 1974) (same)); *see also Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1191 (11th Cir. 2004) ("[I]n general, allegations that local officials failed to comply with state laws are not federal constitutional claims.").

In *Virginia v. Moore*, the United States Supreme Court held that the Fourth Amendment's reasonableness standard can permit certain actions by law enforcement even if they are not authorized by state law. 553 U.S. 164 (2008). The defendant was convicted of possessing cocaine with the intent to distribute, but the Virginia Supreme Court reversed the conviction, reasoning that because the arresting officers should have issued the defendant a citation for driving with a suspended license under Virginia law, and because the Fourth Amendment did not permit search incident to citation, the arrest search violated the Fourth Amendment. *Id.* at 167–68. On appeal, the Supreme Court reversed the decision, holding that the arrest, although violating state law, did not violate the Fourth Amendment because there was probable cause to believe that the defendant committed the crime in the officer's presence. *Id.* at 178. Therefore, the Court did not "incorporat[e] state-law arrest limitations into the Constitution" and instead held that a violation of state law does not *per se* amount to a violation of the Fourth Amendment, reasoning:

Our decisions counsel against changing this calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law. In *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), we reversed a state court that had held the search of a seized vehicle to be in violation of the Fourth Amendment because state law did not explicitly authorize the search. We concluded that whether state law authorized the search was irrelevant. States, we said, remained free "to impose higher standards on searches and seizures than required by the Federal Constitution," *id.,* at 62, 87 S. Ct. 788, 17 L. Ed. 2d 730, but regardless of state rules, police could search a lawfully seized vehicle as a matter of federal constitutional law.

. . .

In *California* v. *Greenwood,* 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), we held that search of an individual's garbage forbidden by California's Constitution was not forbidden by the Fourth Amendment. "[W]hether or not a search is reasonable within the meaning of the Fourth Amendment," we said, has never "depend[ed] on the law of the particular State in which the search occurs." *Id.*, at 43, 108 S. Ct. 1625, 100 L. Ed. 2d 30. **While "[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution," *ibid.*, state law did not alter the content of the Fourth Amendment.**

. . .

We are convinced that the approach of our prior cases is correct, because an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure.

*Id.* at 171 (emphasis added).

The Eleventh Circuit took a similar approach to evaluating section 1983 claims under the Fourth Amendment in *Knight v. Jacobson*, 300 F.3d 1272 (11th Cir. 2002). There, the plaintiff asserted a section 1983 claim against a police officer, claiming that the police officer unconstitutionally arrested him. *Id.* at 1274. The plaintiff argued the following:

> Knight also contends that his arrest, even if supported by probable cause, violated the Fourth Amendment because it was not done in accord with state law. With an exception or two not relevant here, Florida law authorizes warrantless arrests for misdemeanors only if they are committed in the officer's presence. Fla. Stat. Ann. § 901.15(1). The misdemeanor assault in this case was not. From those two premises Knight concludes that his arrest violated the Fourth Amendment. However, there is another premise essential to that conclusion which is not correct, and it is the proposition that an arrest supported by probable cause in circumstances where arrest is not permitted under state law violates the Fourth Amendment.

*Id.* at 1275–76.

The Eleventh Circuit disagreed, "reject[ing] the notion that the Florida law procedures governing warrantless arrests are written into the federal Constitution." *Id.* at 1276. The court stated:

> While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983. *See Barry*, 902 F.2d at 773 ("While Barry may have a remedy under state law [for the warrantless arrest], she has failed to allege a federal constitutional or federal statutory violation"); *Diamond v. Marland*, 395 F. Supp. 432, 439 (S.D. Ga. 1975) ("Even if a police officer violates a state arrest statute, he would not be liable under [§ 1983] unless he also violated

23

federal constitutional law governing warrantless arrests."); *see also Paul v. Davis*, 424 U.S. at 699, 96 S. Ct. at 1159 (rejecting the argument that "every legally cognizable injury which may have been inflicted by a state official acting 'under color of law' establishes a violation of the Fourteenth Amendment"); *Lovins v. Lee*, 53 F.3d 1208, 1210–1211 (11th Cir. 1995) (holding that while the plaintiff may have a claim under state law against defendants because they acted contrary to state law in releasing an inmate who harmed her, that violation of state law did not give her a federal constitutional claim).

*Id.* Thus, the court reversed the decision of the district court and remanded the case with directions that summary judgment be entered for the police officer on the basis of qualified immunity. *Id.* at 1278.

In this case, plaintiff's complaint alleges, in part:

18.     When read together [Ala. Code] §§ 36-21-40, 36-21-46, and 3-1-16 require that any person employed by a county commission possessing full police powers and "charged specifically with the duty of enforcing all laws for the prevention of cruelty to animals," must meet the certification requirements of the APOSTC.

19.     Law enforcement by issuance of a Uniform Non-traffic Citation and Complaint ("UNTCC") is a public function, the exclusive prerogative of the state and its delegates, not granted to private citizens.

20.     The issuance of a UNTCC is a seizure where the recipient is not released from issuer's custody until he or she has signed a promise to later appear in court.

. . .

24

120. The police departments of Tuscumbia, Sheffield, and Muscle Shoals, as well as the Sheriff's office, each had a policy or custom directing or permitting CAS Animal Control Officers to issue UNTCCs for perceived violations of ordinances and animal-related statutes

. . .

129.    The seizure of anyone issued a UNTCC by a CAS Animal Control Officer constituted, or constitutes, an unreasonable seizure violating their Fourth Amendment rights under the U.S. Constitution, . . .

Thus, Plaintiff's section 1983 claim in Count I hinges on alleged violations of state law about who is authorized to issue UNTCCs. However, as established by long-standing legal precedent, a mere violation of state law, without more, does not rise to the level of a federal constitutional violation under the Fourth Amendment. As courts have consistently emphasized, section 1983 is not a vehicle for the enforcement of state law, and any claim for relief under this statute must be anchored in a violation of federal rights. *See Ratlieff v. City of Fort Lauderdale*, No. 22-CV-61029-RAR, 2024 WL 4039849, at *41 n.34 (S.D. Fla. Sept. 4, 2024) ("Section 1983 does not countenance *Monell* liability predicated upon a plaintiff's claim that an official policy caused a violation of *state* law.") (emphasis in original). Consequently, Plaintiff's allegation that CAS officers violated state law by issuing the UNTCCs, even if true, fails to satisfy the necessary standard for a section 1983 claim against Muscle Shoals or Sheffield because such an allegation does not

translate into a violation of the Fourth Amendment. Instead, to sustain such a claim, Plaintiff must demonstrate defendants violated a federally protected right—not simply that they potentially breached state regulations. The alleged infraction of state law, without any corresponding violation of federal constitutional principles, cannot form the basis for relief under section 1983. Without this showing, Count I of the complaint fails as a matter of law and must be dismissed.

> **C.    Plaintiff Has Failed to Allege a Plausible Claim Against Muscle Shoals or Sheffield Under *Monell* Because She Has Not Alleged a Custom or Practice of Issuing UNTCCs Without Probable Cause, and Neither Muscle Shoals Nor Sheffield Conducted the Subject Arrest nor Issued the UNTCCs.**

A municipality cannot be vicariously liable for the constitutional violations of its police officers under a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, section 1983 liability attaches if—**and only if**—the complained-of constitutional violations resulted from a "policy" or "custom" of the municipality. *Id.*; *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Further, a plaintiff must establish that the official policy or custom of the municipality caused, or was the "moving force" behind, the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). As the Eleventh Circuit instructs, "[t]his high standard of proof is intentionally onerous for plaintiffs" because "imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to

26

*respondeat superior* liability—a result never intended by section 1983." *Gold*, 151 F.3d at 1351 n.10.

"To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). In other words, a plaintiff must allege "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted). A plaintiff must also allege that the widespread practice "is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499. Rather, in order to demonstrate the alleged policy or custom of the municipality rises to the level of a "persistent and widespread practice," a plaintiff must ordinarily allege facts of prior incidents to show the pervasiveness of the policy or custom to avoid imposing municipal liability on an isolated incident. *See Thompson v. Spears*, 336 F. Supp. 2d 1224, 1236 (S.D. Fla. 2004).

Plaintiff contends that CAS employees Speegle and Hogan lacked probable cause to issue the UNTCCs to her. (Doc. 1 ¶ 251). Additionally, she alleges that Captain Higginbotham and Investigatory Murner—Tuscumbia police officers—

acted without arguable probable cause in restraining and transporting her to the Colbert County Jail. (*Id.* at ¶ 165). Even if the complaint sufficiently alleges violations of federal constitutional law based on arrests or seizures lacking probable cause against CAS employees and Tuscumbia officers, her claims still fall woefully short of establishing a proper *Monell* claim against Muscle Shoals or Sheffield for violating her Fourth Amendment rights.

Plaintiff's complaint lacks plausible allegations of *both* a constitutional violation, *and* that a municipal custom, practice, or policy attributable to Muscle Shoals and/or Sheffield was the moving force behind that constitutional violation. Even assuming *arguendo* that the issuance of a UNTCC constitutes a "seizure" under the Fourth Amendment (which it does not, *see Kuykendall*, 2021 WL 1171629 at *6), Plaintiff's allegations that probable cause was lacking to either issue her UNTCC or arrest her are utterly conclusory. She includes well-pleaded facts to support her conclusory allegations regarding the alleged absence of probable cause, which is required to state a plausible claim for relief. *Iqbal*, 556 U.S. at 677–79. Furthermore, the complaint contains no allegations of prior instances of UNTCCs being issued or citizens being arrested without probable cause in similar situations. Without such allegations, Plaintiff cannot establish a "persistent and widespread" municipal practice or custom. As discussed, courts have consistently rejected *Monell* claims where the plaintiff failed to identify prior similar violations.

Plaintiff's § 1983 claims against Muscle Shoals and Sheffield also fail because there is no direct causal link between the actions of either of these municipalities and Plaintiff's alleged harm. Plaintiff's arrest, which she claims resulted in a constitutional deprivation, was not effected by Muscle Shoals or Sheffield. A municipality can only be held liable if its ***own*** actions, policies, or customs were the "moving force" behind the alleged constitutional injury. *Harris*, 489 U.S. at 385. Here, Plaintiff has not alleged any facts showing that Muscle Shoals or Sheffield played any role in her arrest or had any control over the actions of Tuscumbia and its officers. Because Muscle Shoals or Sheffield did not arrest or detain Plaintiff, there is no connection between any of the policies, customs, or practices of those cities and her seizure, and therefore no basis for finding that Muscle Shoals or Sheffield is liable for her alleged harm.

Consequently, Plaintiff has failed to plausibly allege the existence of a persistent and widespread custom of issuing UNTCCs or arresting individuals without probable cause. Additionally, Plaintiff's claim must fail due to the absence of a causal link between any conduct of Muscle Shoals or Sheffield and the purported constitutional violation.

### D. Muscle Shoals and Sheffield Adopt and Incorporate All Other Applicable Grounds for Dismissal Asserted By Any Other Defendant.

Finally, as stated in the separate motion and brief filed by the City of Tuscumbia and Officer Higginbotham (Docs. 17, 18), the complaint fails to state a viable or plausible Fourth Amendment claim because, giving consideration to Higginbotham's personal observations as depicted by relevant bodycam video that is subject to consideration on this motion to dismiss, the investigation preceding the arrest, and the plaintiff's own confession, there existed probable cause for the arrest of the sole named plaintiff. Accordingly, Muscle Shoals and Sheffield adopt and incorporate by this reference the arguments made by the City of Tuscumbia and Officer Higginbotham in sections I(A) – (B) and III of their joint brief. (Doc. 18).

The responses of other defendants have not yet come due as of the date of this filing. However, Muscle Shoals and Sheffield reserve the right to also adopt and incorporate additional arguments made by co-defendants as to the lack of viability of the claims asserted.

## V. CONCLUSION

For the foregoing reasons, all claims against Muscle Shoals and Sheffield in the complaint are due to be dismissed with prejudice.

s/ David J. Canupp
David J. Canupp

s/ Allison B. Chandler
Allison B. Chandler

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue, Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail:  djc@LanierFord.com and abc@LanierFord.com

Attorneys for Defendant City of Muscle Shoals, Alabama

s/ Allen L. Anderson
Allen L. Anderson

s/ Patrick E. Sebesta II
Patrick E. Sebesta II

F&B LAW FIRM, P.C.
213 Greene Street
Huntsville, Alabama  35801
Telephone Number:  (256) 536-0095
Facsimile Number:  (256) 536-4440
E-mail:  court@fb-pc.com

Attorneys for Defendant City of Sheffield, Alabama

<u>CERTIFICATE OF SERVICE</u>

      I certify that on this 7th day of October 2024, I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Robert J. Camp
WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB
The Kress Building
301 19th Street North
Birmingham, AL 35203
Phone: 205-314-0500
Fax: 205-254-1500
Email: rcamp@wigginschilds.com

Nathan DeWayne Pope
GORDON & REES
420 North 20th Street, Suite 2200
Birmingham, AL 35203
Phone: 205-243-3421
Email: dpope@grsm.com

Robbie Alexander Hyde
ALEXANDER HYDE LLC
2138 Moore's Mill Road, Ste. A
Auburn, AL 36830
Phone: 334-246-2333
Fax: 334-246-2334
Email: robbie@alexanderhyde.com

                    s/ Allen L. Anderson
                    Allen L. Anderson