FILED

2024 Oct-11  PM 05:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **CANDICE WADE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 3:24-cv-00896-LCB** |
| | ) |
| **COLBERT ANIMAL SERVICES,** | ) |
| **et al.** | ) |
| | ) |
| **Defendants.** | ) |

## COLBERT COUNTY'S BRIEF IN SUPPORT OF MOTION TO DISMISS

COMES NOW Colbert County, Alabama and files the following brief in support of its motion to dismiss:

## I.      INTRODUCTION

Candice Wade's lawsuit arises from her alleged arrest by police officers from the City of Tuscumbia and issuance of a Uniform Non-Traffic Citation and Complaint ("UNTCC") by Colbert Animal Services ("CAS").  From those basic facts, Ms. Wade asserts a constitutional claim against Colbert County asking this Court to certify a class action and enter class-wide injunctive relief.  She also says that Colbert County negligently hired and supervised CAS.  Both claims should be dismissed.

First, Ms. Wade lacks standing for injunctive relief because she fails to allege a real and immediate threat of future injury or that the alleged harm is fairly traceable

1

to any policy, practice, or custom of Colbert County. Second, the alleged violation of state law, which forms the foundation of Ms. Wade's complaint, does not give rise to a claim under the Fourth Amendment, and she fails to plausibly allege Colbert County demonstrated deliberate indifference to any federal constitutional right. Third, Ms. Wade does not plausibly allege a claim against Colbert County because she has not alleged a custom or practice by Colbert County of issuing UNTCCs without probable cause.  Indeed, the facts alleged show that Colbert County did not arrest Ms. Wade or issue a UNTCC. Finally, Ms. Wade's complaint wholly fails to make any allegations that would support a negligent hiring or supervision claim against Colbert County. As a result, the complaint should be dismissed with prejudice.

## I.   PROCEDURAL HISTORY

Candice Wade commenced this action on July 8, 2024 with a fourteen-count Complaint against Colbert Animal Services ("CAS"); Colbert County; Tuscumbia; Muscle Shoals; Sheffield; Captain Steven Higginbotham ("Captain Higginbotham"); Investigator William Murner ("Investigator Murner"); Yolanda Jones ("Jones"); Charles Corey Speegle ("Speegle"); and Jessica Hogan ("Hogan").

The only claim against Colber County is Count I, which seeks class injunctive relief on Ms. Wade's behalf and all persons issued a Uniform Non-Traffic Citation and Complaint ("UNTCC") by CAS. Ms. Wade argues that issuance of UNTCCs by

CAS employees, who were not certified by the Alabama Peace Officers Standards & Training Commission ("APOSTC"), is an unlawful seizure under the Fourth Amendment. (Doc. 1 ¶¶ 20, 129). She also asserts that Colbert County, Muscle Shoals, Sheffield, and Tuscumbia "each had an official policy, practice, or custom under which they used CAS to enforce laws and city ordinances by issuing UNTCCs, including but not limited to those for the prevention of animal cruelty, animal control and animal-related public health—rabies immunizations." (*Id.* ¶ 119.)

## III. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure a claim may be dismissed for failing to state a basis upon which relief can be granted. To avoid dismissal, a complaint must provide a short, plain statement of each claim showing plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). This provides defendants with fair notice of what the claim is and the grounds upon which it rests. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . ."). Dismissal is appropriate "when, on the basis of a dispositive issue of law, no

construction of the factual allegations will support the . . . action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Importantly, a complaint must establish more than a sheer possibility a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts . . . 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief' [as contemplated by rule 8(a)(2)]." *Id.*

## IV.   ARGUMENT

### A.   Ms. Wade Lacks Standing Because She Fails to Allege a Real and Immediate Threat of Future Injury or That the Alleged Harm Is Fairly Traceable to Any Policy, Practice, or Custom of Colbert County.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is subject to dismissal if the Court lacks subject matter jurisdiction. Standing is a jurisdictional issue, *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994), and "a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). When the Court's subject matter jurisdiction is challenged, the plaintiff bears the burden of demonstrating that he or she has Article III standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). Because standing "is not dispensed in gross," a "plaintiff must

demonstrate standing for each claim and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

For a class action to be justiciable, "a <u>named</u> plaintiff [must] have standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) (emphasis in original); *see also Spokeo*, 578 U.S. at 338 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."). In other words, "[w]here . . . the plaintiffs seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."

A claim in a class action lawsuit is subject to dismissal if the named plaintiff does not have standing to bring the claim. *See Doss v. Gen. Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020) (affirming the dismissal of a class action lawsuit because the

named plaintiff did not have standing); *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV-DIMITROULEAS, 2015 WL 11197772 at *3 (S.D. Fla. Jul. 21, 2015) ("As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature.").

In this case, Candice Wade bears the burden of demonstrating that she has standing to pursue a class claim against Colbert County. Yet, her amended complaint fails to establish the necessary standing against Colbert County. Without standing, there is no justiciable controversy before the court, and as such, the claim against Colbert County must be dismissed as a matter of law.

> **1.** **Plaintiff's claim for injunctive relief fails as a matter of law because she has not plausibly alleged a threat of "real and immediate future injury."**

Ms. Wade does not have standing to seek injunctive relief against Colbert County because she has not plausibly alleged in her complaint a threat of "real and immediate future injury."  As a result, she has not pleaded a sufficient "injury-in-fact" that would be redressable by injunctive relief. Consequently, she lacks standing for her claims of injunctive relief against Colbert County.

The three requirements for a plaintiff to have standing are:  (1) the plaintiff has suffered an "injury in fact"—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural

or hypothetical; (2) there is a causal connection between that injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019).

For claims for prospective relief, such as injunctive relief, the plaintiff does not have standing unless she can demonstrate "that an injury is likely to occur immediately[.]" *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003), superseded on other grounds by statute, 42 U.S.C. § 671(a)(16) (requiring state provision of foster care "case review system which meets the requirements described in section[] 675(5)"). Even if the plaintiff demonstrates immediacy, "the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural." *Corbett*, 930 F.3d at 1233; *see also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1247 (11th Cir. 2023) ("'Because injunctions regulate future conduct, a party has standing to seek injunctive relief' only if his injury in fact is 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury."; *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir.

2000) (reasoning that a "perhaps" or "maybe" chance that an injury will occur is not enough to give plaintiffs standing).

The requirement of a real and immediate injury is relevant to both the elements of "injury-in-fact" and "redressability." *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (explaining that "[t]he 'injury-in-fact' demanded by Article III requires an additional showing" by the plaintiff that "he will be affected by allegedly unlawful conduct in the future"); *see also Malik v. United States Dep't of Homeland Sec.*, 78 F.4th 191, 198 (5th Cir. 2023) ("[P]laintiffs seeking injunctive . . . relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury.").

In this case, Ms. Wade asks the Court for a permanent injunction against CAS employees' issuance of UNTCCs and a restructuring of the defendants' animal-related law enforcement. (Doc. 1 ¶ 138). Yet, that request is too speculative to allege a case or controversy susceptible to adjudication by this Court.

Prospective relief may not be awarded based on past conduct without a substantial showing of the likelihood future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff alleged that he was stopped by the defendant officers for a traffic violation and was placed in a chokehold. *Lyons*, 461 U.S. at 97. He sought a preliminary and permanent injunction against Los Angeles barring the use of "control holds" like the hold applied to him. *Id.* at 98. The Court

found that the plaintiff failed to demonstrate a case or controversy that would justify

injunctive relief, reasoning:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.

*Id.* at 105.

In short, the Supreme Court determined that it was no more than "conjecture"

and "speculation" that the plaintiff would find himself in a similar situation and be

subjected to a chokehold without provocation, or that "every instance of a traffic

stop, arrest, or other encounter between the police and a citizen" would end in with

the same use of force." *Id.* at 108. "Absent a sufficient likelihood that [the plaintiff

would] again be wronged in a similar way," the plaintiff "[was] no more entitled to

an injunction than any other citizen of Los Angeles." *Id.* at 111. Overall, the Court

found that the plaintiff lacked standing to pursue injunctive relief against the City of

Los Angeles. *Id.*

Judge Axon reached a similar conclusion in *Guidry v. JP Morgan Chase Bank,

N.A.*, No. 2:20-cv-01618-ACA, 2021 WL 3860961 (N.D. Ala. Aug. 30, 2021). In

*Guidry*, Andrew Guidry called the Jefferson County Sheriff's Office and claimed that an individual repossessing his car was trespassing on his property. *Id.* at *2. Sheriff's Deputies ultimately arrested Guidry for disorderly conduct for refusing to turn the vehicle over. *Id.*   Guidry then sued the Jefferson County Sheriff under 42 U.S.C. §1983 seeking prospective injunctive relief. *Id.* at *10.

Judge Axon, *sua sponte*, examined whether Guidry had standing to assert the claim for injunctive relief against the sheriff. *Id.* at *11. She determined that Guidry's complaint did not allege facts plausibly showing that he was subject to a real and immediate threat of future injury, reasoning:

> The only allegation in the amended complaint that bears on potential future injury is that "what befell" Mr. Guidry "is capable of repetition." But this conclusory statement without factual support is not entitled to a presumption of truth. Mr. Guidry has not alleged that he owns another car subject to private repossession such that sheriff's deputies would have an opportunity to actively assist in an unlawful private repossession of one of his vehicles in the future. Accordingly, Mr. Guidry has not alleged a "sufficient likelihood that he will be wronged again in a similar way."

*Id.* (internal citations omitted). Judge Axon dismissed Guidry's claim for injunctive relief against the sheriff for lack of standing. *Id.*

In this case, Candice Wade lacks standing to seek injunctive relief against Colbert County because she has failed to demonstrate a threat of "real and immediate future injury." The only injury alleged in her complaint is an alleged past violation of her Fourth Amendment rights, which she says occurred when she was issued two

UNTCCs and arrested on August 8, 2023—neither of which is attributable to Colbert County. However, past harm alone is insufficient to confer standing for injunctive relief. To establish such standing, Ms. Wade must show that she is likely—not merely possibly—going to suffer future harm from the same party or under similar circumstances. This she cannot do.

Crucially, Ms. Wade does not allege any likelihood that she will encounter Colbert Animal Services ("CAS") again or be issued a UNTCC by CAS personnel in the future. Tellingly, she fails to allege that she has ownership, possession, or responsibility for any animal such that it is likely that she will even encounter CAS personnel ever again. On the contrary, she disclaims any such ownership or responsibility. (*See* Doc. 1 ¶ 60).

Moreover, there is no real or immediate threat in the future where, as here, the event that would trigger the potential future harm would be a hypothetical future decision by Ms. Wade to violate the law such that a UNTCC would be necessary. *See*, *e.g.*, *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1162 (11th Cir. 2008) (noting the Supreme Court has "voiced its hesitance to assume that the plaintiff will routinely violate the law in the future and thus be brought within arms' reach of the police"); *Kuykendall v. Marshall*, No. 1:20-CV-00797-SGC, 2021 WL 1171629, at *3 (N.D. Ala. Mar. 29, 2021) (finding plaintiff failed to plead sufficient

facts to establish standing for federal action to declare Alabama statute unconstitutional and enjoin state court proceedings).

While Ms. Wade broadly alleges that CAS routinely issues UNTCCs, that generalized assertion is insufficient under *Lyons* and *Guidry*. In those cases, the courts clarified that, for a plaintiff to establish a "case" or "controversy" for injunctive relief, she must show that she herself faces a substantial likelihood of suffering the same harm again—such as receiving another UNTCC or being arrested for an animal-related offense. Although Ms. Wade contends that CAS has issued over 150 UNTCCs within Colbert County (Doc. 1 ¶ 111), she does not allege that these citations are issued so frequently that it is likely she will personally receive another one, especially without any allegations that she owns an animal and is particularly subject to receiving a UNTCC from CAS. Without any specific and concrete allegation of a "real and immediate" threat of future injury, Ms. Wade cannot meet the standing requirements necessary to pursue her claim for injunctive relief against Colbert County. *See*, *e.g.*, *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (finding plaintiffs lacked standing for injunctive and declaratory relief relating to City's policy regulating use of police canines since they could not show that they would necessarily be unlawfully seized by one of the City's police dogs in the future); *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1265 (11th Cir. 2018) (holding the plaintiff lacked standing to seek declaratory

and injunctive relief relating to the use of a chemical spray because there was no "real and immediate threat that she would be subjected to excessive force" by the use-of-spray policy).

> **2.    Ms. Wade's claim for injunctive relief fails as a matter of law because the alleged injury is not "fairly traceable" to any policy, practice, or custom of Colbert County.**

Candice Wade is a Tuscumbia resident who alleges she received a UNTCC in Tuscumbia and was arrested by Tuscumbia police.  Ms. Wade's allegations are *arguably* traceable to Tuscumbia.  But, her request for injunctive relief against Colbert County is too speculative to support standing, because she not sufficiently alleged how any injury to her is fairly traceable to some action of Colbert County rather than an independent action of another party. *See Corbett*, 930 F.3d at 1232; *Lujan*, 504 U.S. at 560–61. For traceability, the plaintiff's injury must be traced to "'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Louis v. Bluegreen Vacations Unlimited, Inc.*, No. 22-12217, 2024 WL 2873778 at *2 (11th Cir. Jun. 7, 2024); *see also Lujan*, 504 U.S. at 560 (explaining that the plaintiff must show "a causal connection between the injury and the conduct complained of," and that "the injury has to be fairly traceable to the challenged action of the defendant"). For an injury to be "fairly traceable" to the defendant's actions, there must be "clear links in the chain of causation[.]" *Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*, 884 F. Supp. 487, 490 (S.D. Fla. 1994).

"'The line of causation between the [alleged] illegal conduct and injury' must not be 'too attenuated.'" *City of Birmingham v. Citigroup Inc.*, No. CV-09-BE-467-S, 2009 WL 8652915 at *3 (N.D. Ala. Aug. 19, 2009).

In *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019), the plaintiffs claimed the defendants sold them dietary supplements that were banned from sale by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. The District Court dismissed the plaintiff's claims against two defendants, finding that the plaintiffs suffered no injury and thus lacked standing. On appeal, the Eleventh Circuit found that the plaintiffs alleged sufficient facts that they suffered an injury in fact because they were deprived of the entire benefit of their bargain with the defendants. *Id.* at 1088. One defendant, Europa, argued that the plaintiffs' alleged injuries were not traceable to the defendant's conduct because they never alleged that Europa distributed any of the supplements that were purchased. *Id.* The Eleventh Circuit rejected the defendant's argument, concluding that the factual allegations supported an inference that the defendant distributed the supplements that were purchased by the plaintiff. *Id.* The court stated:

> The complaint alleged that only two entities supplied the supplements to consumers: IQ and Europa. IQ, the manufacturer, never distributed supplements to retailers, although it did sell supplements directly to consumers through its website. IQ relied on Europa to deliver its supplements to retailers, who sold the products to consumers. According to the complaint, the retailers that Europa supplied included Walgreens and NaturalBodyInc.com. The plaintiffs alleged that Debernardis purchased IQ's supplements from Walgreens through its

14

> website and Damore purchased IQ's supplements from
> NaturalBodyInc.com. As the sole distributor that supplied supplements
> to retailers, only Europa could have provided the supplements the
> plaintiffs bought.

*Id.* at 1088–89. Therefore, the court vacated the decision of the District Court and

held that the plaintiffs had standing to proceed with their claims. *Id.* at 1089.

However, and as applicable here, the United States Supreme Court reached

the opposite conclusion in *Allen v. Wright*, 468 U.S. 737 (1984) and determined

plaintiffs did not have standing to proceed with their claim. *Id.* at 752. In *Allen*,

parents of Black public-school students filed a nationwide class action suit against

the United States Secretary of the Treasury and the Commissioner of Internal

Revenue, alleging that the Internal Revenue Service had not adopted sufficient

standards and procedures to fulfill its obligation to deny tax-exempt status to racially

discriminatory private schools. *Id.* at 739.

Yet, the Supreme Court determined that the plaintiffs did not have standing

because their injury was not fairly traceable to the alleged unlawful conduct on the

part of federal agencies being sued.  Instead, "[t]he line of causation" between the

defendants' alleged unlawful conduct and the "desegregation of respondents'

schools" was "attenuated at best." *Id.* at 757.

In this case, Candice Wade claims that CAS was established as a joint venture

of Colbert County, Muscle Shoals, Sheffield, and Tuscumbia. (Doc. 1 ¶ 26). In a

conclusory fashion, she alleges that Colbert County engaged in unlawful conduct by

having an official policy, practice, or custom of using CAS to enforce laws and city ordinances, including those related to animal cruelty prevention, animal control, and rabies immunizations. (*Id.* at ¶ 119). But, she never alleges how she has been injured by Colbert County in the past or how some action of Colbert County will harm her in the future.

Ms. Wade attempts to implicate Colbert County because Colbert County participated in the joint venture that formed CAS. But, the complaint fails to sufficiently allege that any policy, practice, or custom of Colbert County was the proximate cause of her injury. Unlike in *Debernardis*, where the complaint supported an inference of direct involvement, the allegations here do not plausibly suggest that Colbert County played any active or direct role in shaping Tuscumbia's law enforcement policies. Ms. Wade does not demonstrate any causal connection between the purported utilization of CAS by Colbert County and the events that transpired entirely within Tuscumbia's jurisdiction.

Any semblance of causal connection alleged here is "attenuated at best," which erodes traceability and thus standing. *Allen*, 468 U.S. at 757. Ms. Wade's claim hinges on an unsupported and unreasonable inference that Colbert County exerted influence over Tuscumbia's independent decision-making regarding law enforcement practices and the issuance of UNTCCs by CAS. There is no basis to conclude that Colbert County had any control or influence over Tuscumbia's actions.

In light of the foregoing, Candice Wade's claims against Colbert County are due to be dismissed, as the complaint fails to plausibly allege an actionable connection between the conduct of Colbert County and the alleged injury.

### B. An Alleged Violation of State Law Does Not Establish a Violation of the Fourth Amendment.

Ms. Wade's complaint wrongly assumes that issuance of a UNTCC which might be unauthorized under Alabama law automatically violates the Fourth Amendment of the United States constitution.   Section 1983 does not create a remedy for "every wrong" committed under the color of state law, but "only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) Indeed, "there is no federal right not to be arrested in violation of state law." *Id.* (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that federal law, not state law, determines the validity of arrests under the Fourth Amendment); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (same); *McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984) (same); *Street v. Surdyka*, 492 F.2d 368, 370–73 (4th Cir. 1974) (same)); *see also Garvie v. City of Fort Walton Beach,* 366 F.3d 1186, 1191 (11th Cir. 2004) ("[I]n general, allegations that local officials failed to comply with state laws are not federal constitutional claims.").

In *Virginia v. Moore*, the United States Supreme Court held that the Fourth Amendment's reasonableness standard can permit certain actions by law enforcement even if they are not authorized by state law. 553 U.S. 164 (2008). The

17

defendant was convicted of possessing cocaine with the intent to distribute, but the Virginia Supreme Court reversed the conviction, reasoning that because the arresting officers should have issued the defendant a citation for driving with a suspended license under Virginia law, and because the Fourth Amendment did not permit search incident to citation, the arrest search violated the Fourth Amendment. *Id.* at 167–68. On appeal, the Supreme Court reversed the decision, holding that the arrest, although violating state law, did not violate the Fourth Amendment because there was probable cause to believe that the defendant committed the crime in the officer's presence. *Id.* at 178. Therefore, the Court did not "incorporat[e] state-law arrest limitations into the Constitution" and instead held that a violation of state law does not per se amount to a violation of the Fourth Amendment, reasoning:

> Our decisions counsel against changing this calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law. In *Cooper v. California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), we reversed a state court that had held the search of a seized vehicle to be in violation of the Fourth Amendment because state law did not explicitly authorize the search. We concluded that whether state law authorized the search was irrelevant. States, we said, remained free "to impose higher standards on searches and seizures than required by the Federal Constitution," *id.*, at 62, 87 S. Ct. 788, 17 L. Ed. 2d 730, but regardless of state rules, police could search a lawfully seized vehicle as a matter of federal constitutional law.
> . . .
>
> In *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), we held that search of an individual's garbage forbidden by California's Constitution was not forbidden by the Fourth Amendment. "[W]hether or not a search is reasonable within the

meaning of the Fourth Amendment," we said, has never "depend[ed] on the law of the particular State in which the search occurs." Id., at 43, 108 S. Ct. 1625, 100 L. Ed. 2d 30. While "[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution," ibid., state law did not alter the content of the Fourth Amendment.

. . .

We are convinced that the approach of our prior cases is correct, because an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure.

*Id.* at 171 (emphasis added).

The Eleventh Circuit took a similar approach to evaluating section 1983 claims under the Fourth Amendment in *Knight v. Jacobson*, 300 F.3d 1272 (11th Cir. 2002). There, the plaintiff asserted a section 1983 claim against a police officer, claiming that the police officer unconstitutionally arrested him. *Id.* at 1274. The plaintiff argued the following:

Knight also contends that his arrest, even if supported by probable cause, violated the Fourth Amendment because it was not done in accord with state law. With an exception or two not relevant here, Florida law authorizes warrantless arrests for misdemeanors only if they are committed in the officer's presence. Fla. Stat. Ann. § 901.15(1). The misdemeanor assault in this case was not. From those two premises Knight concludes that his arrest violated the Fourth Amendment. However, there is another premise essential to that conclusion which is not correct, and it is the proposition that an arrest supported by probable cause in circumstances where arrest is not permitted under state law violates the Fourth Amendment.

*Id.* at 1275–76.

The Eleventh Circuit disagreed, "reject[ing] the notion that the Florida law procedures governing warrantless arrests are written into the federal Constitution." *Id.* at 1276.

> While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983. *See Barry*, 902 F.2d at 773 ("While Barry may have a remedy under state law [for the warrantless arrest], she has failed to allege a federal constitutional or federal statutory violation"); *Diamond v. Marland*, 395 F. Supp. 432, 439 (S.D. Ga. 1975) ("Even if a police officer violates a state arrest statute, he would not be liable under [§ 1983] unless he also violated federal constitutional law governing warrantless arrests."); *see also Paul v. Davis*, 424 U.S. at 699, 96 S. Ct. at 1159 (rejecting the argument that "every legally cognizable injury which may have been inflicted by a state official acting 'under color of law' establishes a violation of the Fourteenth Amendment"); *Lovins v. Lee*, 53 F.3d 1208, 1210–1211 (11th Cir. 1995) (holding that while the plaintiff may have a claim under state law against defendants because they acted contrary to state law in releasing an inmate who harmed her, that violation of state law did not give her a federal constitutional claim).

*Id.*

> In this case, plaintiff's complaint alleges, in part:

> 18. When read together [Ala. Code] §§ 36-21-40, 36-21-46, and 3-1-16 require that any person employed by a county commission possessing full police powers and "charged specifically with the duty of enforcing all laws for the prevention of cruelty to animals," must meet the certification requirements of the APOSTC.

> 19. Law enforcement by issuance of a Uniform Non-traffic Citation and Complaint ("UNTCC") is a public function, the exclusive prerogative of the state and its delegates, not granted to private citizens.

20. The issuance of a UNTCC is a seizure where the recipient is not released from issuer's custody until he or she has signed a promise to later appear in court.

. . .

120. The police departments of Tuscumbia, Sheffield, and Muscle Shoals, as well as the Sheriff's office, each had a policy or custom directing or permitting CAS Animal Control Officers to issue UNTCCs for perceived violations of ordinances and animal-related statutes

. . .

129. The seizure of anyone issued a UNTCC by a CAS Animal Control Officer constituted, or constitutes, an unreasonable seizure violating their Fourth Amendment rights under the U.S. Constitution, . . .

Ms. Wade's section 1983 claim against Colbert County hinges on alleged violations of state law about who is authorized to issue UNTCCs. Yet, a mere violation of state law, without more, does not rise to the level of a federal constitutional violation under the Fourth Amendment. Section 1983 is simply not a vehicle for the enforcement of state law, and any claim for relief under this statute must be anchored in a violation of federal rights. *See Ratlieff v. City of Fort Lauderdale*, No. 22-CV-61029-RAR, 2024 WL 4039849, at *41 n.34 (S.D. Fla. Sept. 4, 2024) ("Section 1983 does not countenance *Monell* liability predicated upon a plaintiff's claim that an official policy caused a violation of state law.") (emphasis in original).

Ms. Wade's allegation that CAS officers violated state law by issuing the UNTCCs, even if true, fails to satisfy the necessary standard for a Section 1983 claim against Colbert County because such an allegation does translate into a violation of the Fourth Amendment. Instead, to sustain such a claim, Ms. Wade must demonstrate

violation of a federally protected right—not simply a potential breach of state regulations. The alleged infraction of state law, without any corresponding violation of federal constitutional principles, cannot form the basis for relief under Section 1983. Without this showing, Count I of the complaint fails as a matter of law and must be dismissed.

## C.   Issuance of a UNTCC is not a Seizure under the Fourth Amendment.

Ms. Wade's request for injunctive relief against the County is based on the assumption that issuance of a UNTCC is a seizure under the Fourth Amendment. (Doc. 1 ¶ 121, 128, 129.) That assumption is incorrect.  The mere issuance of a citation is qualitatively different from a physical seizure or arrest, in which courts usually require the subject to feel that she is not free to leave. *See Bielanski v. County of Kane*, 550 F.3d 632 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes.").  *Grider v. City of Auburn*, 628 F. Supp. 2d 1322, 1331 (M.D. Ala. 2009); see also, *Lomax v. Ruvin*, No. 09-23293-CIV-UNGARO, 2010 WL 11595352 at *6 (S.D. Fla. Nov. 16, 2010) ("[T]he issuance of a summons or an order to show cause requiring a court appearance on a future date and without any travel restrictions is not a seizure under the Fourth Amendment."); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment

22

seizure."); *Bielanski v. Cty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes.").

Judge Cornelius reached a similar conclusion in *Kuykendall v. Marshall*, No. 1:20-cv-00797-SGC, 2021 WL 1171629 (N.D. Ala. Mar. 29, 2021).  In Kuykendall, the plaintiff was issued a Uniform Traffic Ticket and Complaint ("UTTC") and sued to stop the State court criminal proceedings against him.  He argued that the statute authorizing UTTCs violated the Fourth Amendment on its face, but Judge Cornelius disagreed:

> The Supreme Court "adhere[s] to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). …. The plaintiff's argument as to the "irreparable harm" exception fails because a traffic citation is not a seizure under the Fourth Amendment and, therefore, § 32-5-171(b) is not flagrantly and/or patently violative of express constitutional prohibitions. *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (misdemeanor defendant who had to appear in court was not seized under Fourth Amendment where promise to appear was akin to promise "motorist makes when issued a traffic citation"); *Williams v. Chai-Hsu Lu*, 335 F.3d 807, 809 (8th Cir. 2003); *McNeill v. Town of Paradise Valley*, 44 F. App'x 871, *1 (9th Cir. 2002); *see also DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (traffic ticket that required a plaintiff to appear at hearing and answer to charges was not a "seizure"); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235-36 (11th Cir. 2004) abrogated on other grounds by *Williams v. Aguirre*, 965 F.3d 1147

(11th Cir. 2020) (being "required to (1) pay a $1,000 bond; (2) appear at [an] arraignment; and (3) make two trips from New Jersey to Florida to defend herself in court, pursuant to the authority of the state" did not "constitute a significant deprivation of [the plaintiff's] liberty" and therefore did not constitute "a seizure violative of the Fourth Amendment.").

*Kuykendall*, 2021 WL 1171629 at *6.

In summary, Ms. Wade seeks class relief because she believes issuance of a UNTCC was a seizure in violation of the Fourth Amendment. But, issuance of such citations is not a seizure. As a result, Ms. Wade has not alleged a violation of the Fourth Amendment and she has no basis for class relief.

> **D.    Plaintiff Has Failed to Allege a Plausible Claim Against Colbert County Under *Monell* Because She Has Not Alleged a Custom or Practice of Issuing UNTCCs Without Probable Cause, and Colbert County Did Not Conduct the Subject Arrest or Issue the UNTCCs.**

Colbert County cannot be vicariously liable for constitutional violations under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, section 1983 liability attaches only if the complained-of constitutional violations resulted from a "policy" or "custom" of Colbert County. *Id.*; *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Ms. Wade must establish that the official policy or custom of Colbert County caused, or was the "moving force" behind, the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). "This high standard of proof is intentionally onerous for

plaintiffs" because "imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983." *Gold*, 151 F.3d at 1351 n.10.

"To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). In other words, a plaintiff must allege "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted). A plaintiff must also allege that the widespread practice "is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499. Rather, in order to demonstrate the alleged policy or custom of the municipality rises to the level of a "persistent and widespread practice," a plaintiff must ordinarily allege facts of prior incidents to show the pervasiveness of the policy or custom to avoid imposing municipal liability on an isolated incident. *See Thompson v. Spears*, 336 F. Supp. 2d 1224, 1236 (S.D. Fla. 2004).

Ms. Wade contends that CAS employees Speegle and Hogan lacked probable cause to issue the UNTCCs to her. (Doc. 1 ¶ 251). Additionally, she alleges that Captain Higginbotham and Investigator Murner —Tuscumbia police officers— acted without arguable probable cause in restraining and transporting her to the Colbert County Jail. (*Id.* at ¶ 165). Even if the complaint sufficiently alleges violations of federal constitutional law based on arrests or seizures lacking probable cause against CAS employees and Tuscumbia officers, her claims still fall short of establishing a proper *Monell* claim against Colbert County for violating her Fourth Amendment rights.

Ms. Wade's complaint lacks plausible allegations of both a constitutional violation, and that a custom, practice, or policy attributable to Colbert County was the moving force behind that constitutional violation. Even assuming arguendo that the issuance of a UNTCC constitutes a "seizure" under the Fourth Amendment (which it does not, see *Kuykendall*, 2021 WL 1171629 at *6), Ms. Wade's allegations that probable cause was lacking to either issue her UNTCC or arrest her are utterly conclusory. She includes no well-pleaded facts to support her conclusory allegations regarding the alleged absence of probable cause, which is required to state a plausible claim for relief. *Iqbal*, 556 U.S. at 677–79. Furthermore, the complaint contains no allegations of prior instances of UNTCCs being issued or citizens being arrested without probable cause in similar situations. Without such allegations, Ms.

Wade cannot establish a "persistent and widespread" municipal practice or custom. As discussed, courts have consistently rejected *Monell* claims where the plaintiff failed to identify prior similar violations.

Ms. Wade's § 1983 claim against Colbert County also fails because there is no direct causal link between the actions of Colbert County and her harm. Ms. Wade's arrest, which she claims resulted in a constitutional deprivation, was not effected by Colbert County. And, Colbert County can only be held liable if its own actions, policies, or customs were the "moving force" behind the alleged constitutional injury. *Harris*, 489 U.S. at 385; *see also Clark v. Miller*, No. 09–0694–CG–B, 2011 WL 777935 (S.D. Ala. Feb. 25, 2011).

Here, Ms. Wade has not alleged any facts showing that Colbert County played any role in her arrest or had any control over the actions of Tuscumbia and its officers. Because Colbert County did not arrest or detain Ms. Wade, there is no connection between any of the policies, customs, or practices of those cities and her seizure, and therefore no basis for finding that Colbert County is liable for her alleged harm.

### E.   Colbert County Cannot Be Liable For Negligent Hiring or Supervision of CAS.

Ms. Wade asserts two negligence claims against Colbert County. First, she says that Colbert County negligently "engaged," i.e. hired, CAS. (Doc. 1 ¶ 215.) Second, she claims that Colbert County negligently supervised CAS. (*Id.*) To

successfully state a claim for negligent hiring or supervision, Ms. Wade must allege: (1) that CAS committed an Alabama common-law tort; (2) that Colbert County knew of TAS's incompetency or would have known of its incompetency had it exercised due and proper diligence; and (3) that Colbert County failed to respond adequately after gaining notice of CAS's incompetency. *Vasser v. Tezi Express, LLC*, No. 4:19-cv-1823-CLM, 2022 WL 19625 at *9 (Jan. 3, 2022). Ms. Wade's complaint contains no such allegations. Conclusory allegations of negligent hiring or supervision are insufficient. *Agee v. Mercedes-Benz U.S., Intern., Inc.*, No. 7:12–CV–4014–SLB, 2013 WL 832354 (Feb. 28, 2013).

## V.    CONCLUSION

Based upon the foregoing, Defendant Colbert County, Alabama requests that this Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted this the 11th day of October, 2024

By:   /s/ Robert C. Lockwood
      Robert C. Lockwood
      Attorney for the Colbert County, Alabama

Lockwood & Associates, Inc.
527 Fountain Row
Huntsville, Alabama 35801
(256) 400-4522
Robert@LockwoodLawyers.com

## CERTIFICATE OF SERVCE

I certify that on this 11th day of October 2024, I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Robert J. Camp
WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB
The Kress Building 301
19thStreet North
Birmingham, AL 35203
Email: rcamp@wigginschilds.com
Attorneys for Plaintiff

David J. Canupp
Allison B. Chandler
LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue, Suite 102 (35805)
Huntsville, AL 35804
E-mail:  djc@LanierFord.com and abc@LanierFord.com
Attorneys for Defendant
City of Muscle Shoals, Alabama

Allen L. Anderson
Patrick E. Sebesta, II
F&B LAW FIRM, P.C.
213 Greene Street
Huntsville, Alabama 35801
E-mail:court@fb-pc.com
Attorneys for Defendant City of Sheffield, AL
Allen L. Anderson

/s/ Robert C. Lockwood
Robert C. Lockwood