FILED
2025 Feb-04  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

CANDICE WADE, *et al.*,                )
                                       )
Plaintiffs,                            )
                                       )
v.                                     )          Civil Action No. 3:24-cv-896-LCB
                                       )
COLBERT ANIMAL SERVICES,   )
*et al.*,                              )
                                       )
            Defendants.                )

### *Amicus* Brief of Alabama's Attorney General Steve Marshall

Plaintiff Candice Wade alleges her right to be free from unlawful seizures was violated on August 8, 2023, when she was cited and later arrested and booked at the Colbert County Jail for committing cruelty to a dog in the second degree, Ala. Code § 13A-11-241(b). *See generally* Doc. 30. Wade alleges Ala. Code § 13A-11-241's purportedly vague text permitted her arrest, and she asks the Court to find it unconstitutional. Doc. 30 ¶¶278-290. But § 241(b)'s language clearly identifies *who* can face prosecution for violating it and *when* a person's conduct becomes criminal. And because Wade was not cited under § 241(a), she lacks standing to challenge that subsection. The Court should therefore refuse Wade's request.

1

## I.      The Amended Complaint's Allegations

Wade lives with her sister in a home in Tuscumbia, Alabama. Doc. 30 ¶¶ 3, 97. In 2023, a stray dog wandered into her neighborhood and began spending time in her unfenced front yard.  Wade and her neighbors gave the dog food and water. *Id.* ¶¶ 74-76. Later, the dog had a litter of puppies, and they, too, began spending time on Wade's property. *Id.* ¶¶ 76-77. Wade doesn't allege that she ever shooed the dogs away or kicked them out of her yard.

Around August 5, 2023, Wade saw the puppies and thought they looked healthy. Doc. 30 ¶80. But when she saw them the next day, they looked sickly and fatigued, and some had died. *Id.* ¶ 81. Wade wanted to take the puppies to a veterinarian but couldn't afford to, so she gave them Pedialyte and a six-in-one vaccine she bought from a local Rural King (which a neighbor helped administer). *Id.* ¶¶ 82-83.

On August 7, Wade saw that the puppies' condition hadn't improved, and she and a neighbor discussed taking them to a veterinarian. Doc. 30 ¶ 84. The next morning, Wade's neighbor and her child's father took the puppies to a veterinarian. *Id.* ¶ 85. Not long afterward, defendants Corey Speegle and Jessica Hogan arrived at Wade's home while on duty as agents of defendant Colbert Animal Services; they asked Wade about the condition of the puppies and their mother. *Id.* ¶ 86. During this

interaction, Speegle found a dead puppy on Wade's property and radioed local law enforcement for support. *Id.* ¶ 87.

Officers Steven Higginbotham and William Murner of the Tuscumbia Police Department responded to Speegle's call and, based on information they received, worked with Speegle to complete and issue Wade citations for violating ALA. CODE § 13A-11-241(b) and § 3-7A-2. *Id*. ¶¶ 88-96, 99, p. 86. When Speegle presented Wade with the citation for violating § 13A-11-241(b), she objected, but ultimately signed it. *Id.* ¶ 101. When Speegle presented Wade with the second citation for violating § 3-7A-2, she refused to sign, and Higginbotham and Murner arrested her and drove her to the Tuscumbia County Jail. *Id.* ¶¶ 102-110.

In Count V of her Amended Complaint, Wade asks the Court to declare ALA. CODE § 13A-11-241 unconstitutional due to its alleged vagueness. She alleges § 241's use of "person" allows for the arrest and prosecution of anyone–including "innocent bystanders" and "good Samaritans"–who encounters a neglected dog but won't help it or who tries to help but can't afford to take it to a veterinarian. Doc. 30 ¶¶ 281-285.

## II.    Alabama's Law

On May 23, 2000, Alabama's Legislature passed H.B. 182, the bill featuring what became Chapter 11, Article 11 of Alabama's Criminal Code.[1] Ala. Act 2000-615, § 2. According to the act's preamble, the Legislature intended to "establish crimes of cruelty to a dog or cat of intentional extreme cruelty . . . to provide for penalties; [and] to provide for immunity under certain conditions[.]" *Id*. The act codified two offenses: cruelty to a dog or cat in the first and second degrees. *Id.* § 2(a), (b); ALA. CODE § 13A-11-241(a), (b).

Under ALA. CODE § 13A-11-241(a), a person commits first degree cruelty to a dog or cat if she "intentionally tortures any dog or cat[.]" Section 240 defines "torture" as "doing physical injury to a dog or cat by [] inflict[ing] inhumane treatment or gross physical abuse meant to cause said animal intensive or prolonged pain or serious physical injury, or thereby causing death due to said act." ALA. CODE § 13A-11-240(a). The offense is a Class C felony. *Id*.

Section 241(b) provides that a person commits second degree cruelty to a dog or cat if he "in a cruel manner . . . deprives of necessary sustenance or shelter, unnecessarily or cruelly beats, injures, mutilates, or causes the same to be done" to a dog or cat. In this context, "cruel" means "[e]very act, omission, or neglect,

---

[1] Title 13A of the Alabama Code "is known and may be cited as the Alabama Criminal Code." ALA. CODE § 13A-1-1 (quotation marks omitted).

4

including abandonment, where unnecessary or unjustifiable pain or suffering, including abandonment, is caused or where unnecessary pain or suffering is allowed to continue." ALA. CODE § 13A-11-240(b).

### III.    The Void for Vagueness Doctrine

A statute facing a constitutional challenge enjoys a strong presumption of validity. *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010). And this presumption often carries the day even if a statute proves difficult to understand. *Joel*, 232 F.3d at 1360; *Hughes v. State*, 315 So. 3d 1139, 1148 (Ala. Crim. App. 2020) ("Mere difficulty of ascertaining its meaning for the fact that it is susceptible of different interpretations will not render a statute . . . too vague or uncertain to be enforced.") (quoting *City of Birmingham v. Samford*, 149 So. 2d 271, 276 (Ala. 1963)). Courts will, moreover, defer to a constitutionally sound interpretation of a law when confronted with a competing and unlawful interpretation. *U.S. v. Estrada*, 969 F.3d 1245, 1265 (11th Cir. 2020). It's against this backdrop that courts consider vagueness challenges.

The concept of unconstitutional vagueness derives from the principle that people have a right to know what the law permits and forbids. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). To succeed on a vagueness claim, a challenger must show that a law's *text* is vague. *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1334 (M.D. Ala. 2019) (citing *Indigo Room, Inc. v. City of Fort Myers*, 710

F.3d 1294, 1302 (11th Cir. 2013)). Unconstitutional vagueness appears in a law when it fails to say in language plain enough for an ordinary person to understand what it forbids or is so lacking in standards that it encourages arbitrary and discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The Supreme Court has explained that the latter presents a more substantial concern than the former. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Courts won't find a law vague simply because it's a product of inartful drafting or because its language may result in a "close case." *United States v. Williams*, 553 U.S. 285, 306 (2008); *Joel v. City of Orlando*, 232 F.3d 1353, 1360 (11th Cir. 2000). Nor will a court find a law vague based on its application to a hypothetical scenario. *Doe 1*, 367 F. Supp. 3d at 1334.

Consistent with the above, a court examining a statute for vagueness looks first to its text to discern whether it sets out plainly perceivable boundaries. *U.S. v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010). If it does, the court must stop its inquiry and go no further. *Id.* If some textual ambiguity appears, the court must decide whether law enforcement officers, when exercising their inherent discretion, would enforce the law in a way that failed to hew to guidelines customary to the type of law at issue and subject innocent people to prosecution. *Skilling*, 561 U.S. at 412-13 ("[W]e perceive no significant risk that the [] statute, as we interpret it today, will be stretched out of its shape. Its prohibition[s] . . . draw[] content not only from

6

[precedent], but also from federal statutes proscribing—and defining—similar crimes[.]”); *Joel*, 232 F.3d at 1360 (“Nor does the ordinance encourage arbitrary and discriminatory enforcement. [P]olice officers charged with enforcing the ordinance necessarily must exercise some level of discretion . . . but must also hew to the guidelines set forth in [official guidance].” (citation omitted)).

## IV.    Argument

As already noted, Wade asks the Court to declare ALA. CODE § 13A-11-241 unconstitutionally vague in its entirety. But her challenge should fail for several reasons.

To start, Wade lacks standing to challenge § 241(a). She wasn't arrested for violating nor prosecuted under that section of Alabama's Criminal Code. Nor did she allege any facts plausibly establishing a credible threat of prosecution under that provision in the future. The Court should therefore refuse to take up her challenge to that subsection.[2]

Wade's challenge to § 241(b) fares no better. There, she claims the word “person” as used in that provision renders the subsection unconstitutionally vague. But there's nothing vague at all about the word “person.” Wade also insists that § 241(b)'s use of the word “person” fails to limit appropriately limit the provision's

---

[2] Even if Wade *had* standing to challenge § 241(a) (and she doesn't), the argument below explaining that the “person” who could be subject to prosecution under § 241(b) applies with equal force to § 241(a).

applicability, permitting the arrest of "bystanders" and "good Samaritans" who don't or can't get a stray dog veterinary care. As shown below, Wade's contentions there are meritless. Section 241(b)'s text features no unconstitutional vagueness when read alone and in conjunction with other provisions in Alabama's Criminal Code.

### A.    Wade Lacks Standing to Challenge § 241(a).

Standing is an "irreducible constitutional minimum" that a party must have at the outset of and maintain throughout litigation. *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1331 (M.D. Ala. 2019) (citations omitted). To have standing to assert a claim, a plaintiff must allege facts plausibly establishing (a) she's suffered an injury in fact; (b) the defendant caused her injury; and (c) a favorable decision from the court would redress her injury. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). To satisfy standing's "foremost" requirement of an injury in fact, a plaintiff must plausibly allege she's suffered the "invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell*, 964 F.3d at 996 (cleaned up). When a party (like Wade) seeks prospective injunctive relief, she must allege facts plausibly establishing a past injury *and* a substantial likelihood of an imminent injury to meet the injury in fact requirement. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013); *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). Wade lacks standing to challenge § 241(a) because she hasn't alleged that provision

has caused or will imminently cause her an actual injury. The Court should therefore refuse to take up her challenge.

The facts show Wade was cited and eventually arrested for violating ALA. CODE § 13A-11-241(b), not § 241(a). *See generally* Doc. 30; Section I, *supra*. Given Wade wasn't cited or arrested for violating § 241(a), she can't credibly argue that provision *actually* injured her and gives her standing to challenge it here.

Nor has Wade shown that she faces an imminent an injury due to § 241(a)'s enforcement. To do so, Wade had to plausibly allege a "credible" threat of prosecution. *Little v. Strange*, 796 F. Supp. 2d 1314, 1329 (M.D. Ala. 2011) (collecting authorities).  But the only allegations Wade offers to support her challenge to § 241(a) include the following: (a) she was arrested for violating another law, § 241(b), more than a year ago; (b) she intends to help stray dogs in the future; (c) she won't be able to get them to a veterinarian; and (d) the statute is vague and presents a "real and immediate threat" of future prosecution. Doc. 30 ¶¶ 278, 283-286, p. 86. In other words, Wade simply concludes the statute is vague and its mere continued presence on the statute books will surely result in her future arrest because she was once arrested for violating a *different law* and she wants to help stray dogs. Nowhere does Wade allege any *facts* to suggest that she'll be prosecuted in accordance with this provision for engaging in this conduct. And her conclusory allegations don't evince the credible threat of future prosecution needed to establish

standing to challenge § 241(a). *Muransky*, 979 F.3d at 924 ("General factual allegations of an injury" do not "plausibly and clearly allege a concrete injury" as "mere conclusory statements do not suffice" to establish standing); s*ee also City of Los Angeles v. Lyons,* 461 U.S. 95, 105-06 (1983) (respondent lacked standing to pursue declaratory and injunctive relief because he failed to show substantial likelihood of recurrence of alleged unconstitutional conduct). The Court should, therefore, dismiss Wade's challenge to § 241(a) for lack of standing.

### B.    Nothing about the Word "Person" Renders § 241(b) Vague.

Wade insists § 241(b) fails for vagueness because it employs the word "person" instead of "owner" to identify who could face prosecution under its terms. Her position is a total nonstarter. There's nothing unconstitutionally vague about the word "person" as it appears in § 241(b). There, that word carries its ordinary and everyday meaning: "[a] human being." ALA. CODE § 13A-1-2(11); *see also Person*, BLACK'S LAW DICTIONARY (12th ed. 2024). In its simplest terms, the statute reads that any human being who "in a cruel manner . . . deprives of necessary sustenance or shelter, unnecessarily or cruelly beats, injures, mutilates, or causes the same to be done" to a dog or cat is guilty of a violation. The prohibitions this law creates and its applicability couldn't be clearer. Consequently, Wade's challenge centered on the word "person" fails. *U.S. v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010) (court ends vagueness inquiry if law's text establishes clear boundaries); *Doe 1 v. Marshall*, 367

F. Supp. 3d 1310, 1334 (M.D. Ala. 2019) (failure to show textual vagueness fatal to void-for-vagueness challenge).

### C.    Wade's "Bystander" and "Good Samaritan" Arguments are Meritless.

As already noted, Wade centers her vagueness challenge to § 241(b) on the word "person." To the extent she contends that word combined with other language in § 241(b) renders that provision unconstitutionally vague, she's wrong. Rather, reading the statute as a whole clearly shows that the only "person" who could be found guilty of depriving a dog of sustenance or shelter are its owner or someone who assumed a duty to it.

### 1.    Section 241(b)'s text shows only a dog's owner or someone who assumed a duty to it could be found guilty of cruelly depriving it of sustenance or shelter.

Wade frames her challenge around a hypothetical omission: the failure to get a strange dog medical care. Doc. 30 ¶ 284; ALA. CODE § 13A-2-1(3); *see also Sickel v. State*, 363 P.3d 115, 117 (Alaska Ct. App. 2015). While § 241(b) contemplates that depriving a dog of sustenance, i.e., failing to get it necessary medical care,[3] can

---

[3] When interpreting a statute, courts give undefined words their ordinary and plain meaning. *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 976 (11th Cir. 2014). The Criminal Code does not define "deprive" and "sustenance," but their ordinary and plain meanings show that the offense contemplated here qualifies as an omission or failure to procure a dog medical care. *See Sustenance,* MERRIAM-WEBSTER DICTIONARY ("[M]eans of support, maintenance, or subsistence. The act of sustaining. The state of being sustained. A supplying or being supplied with the necessaries of life[.]"); *Deprive*, MERRIAM-WEBSTER DICTIONARY ("[T]o withhold something from[.]"); *Deprive*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A withholding of something someone needs.").

amount to unlawfully cruel treatment, it doesn't contemplate that bystanders or people who haven't assumed a duty of care to a strange dog violate its terms by not taking it to a veterinarian.

Section 13A-1-4 of the Alabama Code states that "[n]o act or omission is a crime unless made so by this title[.]" Later, § 13A-2-1(3) explains that an "omission" is "[a] failure to perform an act as to which a duty of performance is imposed by law." That section's commentary provides "it [is] clear that omissions are included where there is a legal duty to act, which is consistent with Alama law." Editor's Notes, § 13A-2-1 Commentary (emphasis added). The same commentary also says, "[t]here may be liability if there is a legal duty to perform the omitted act, whether explicitly provided by statute or not[.]" Put simply, the Criminal Code alone determines whether a person commits an offense. A person may commit an offense by omission *only if* they had a duty to act, and that duty can exist because of a statue or other source of law.

But nowhere in Alabama's Criminal Code does a duty to get a stray dog medical care appear. And no case from any Alabama court applying and interpreting these statutes suggests a contrary conclusion. Nor does this duty appear in any decision from an Alabama court discussing common law criminal offenses. In fact, the duty to get a strange dog medical care doesn't even appear in cases from Alabama courts discussing common law duties of care in tort. This last point is particularly

telling. Since Alabama doesn't recognize a duty of care to a strange animal in tort, finding that duty and imposing criminal penalties for engaging in the same omissive conduct would be "perverse." *LePage v. Ctr. for Reprod. Med., P.C.*, --- So.3d ----, 2024 WL 656591, at *7 (Ala. Feb. 16, 2024), *reh'g denied*, 2024 WL 1947312 (Ala. May 3, 2024), and *cert. denied sub nom. Ctr. for Reprod. Med. v. Burdick-Aysenne*, 2024 WL 4427233 (U.S. Oct. 7, 2024) ("[I]t would be perverse for Alabama law to hold a defendant criminally liable for [enumerated conduct] while immunizing him from civil liability for the same offense. The reason that [] result would be anomalous is because criminal liability is, by its nature, more severe than civil liability[.]").

Consistent with the above, Alabama law imposes no duty to act on people who encounter a strange dog that appears distressed due to another's neglect. *Finley v. Patterson*, 705 So. 2d 826, 828 (Ala. 1997) (no duty to stop a third party's criminal conduct). And a duty to a dog *might* arise only if a person assumed it by taking the dog in and caring for it. *E.g., Sickel v. State*, 363 P.3d 115 (Alaska Ct. App. 2015); *cf. Bryan v. Alabama Power Co.*, 20 So. 3d 108, 119 (Ala. 2009) ("Alabama clearly recognizes the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith. However, the existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances.") (cleaned up).

Taken together, the above shows that the only "person" who could face criminal liability under § 241(b) for failing to get a dog medical care includes its owner and (perhaps) someone who assumed a duty of care to it.

The only court in the country to squarely address this issue reached the conclusion discussed above. In *Sickel v. State*, Alaska's Court of Appeal faced a vagueness challenge nearly identical to the one Wade brings here. 363 P.3d 115 (Alaska Ct. App. 2015). There, the defendant-appellant argued she'd been wrongly convicted under the state's animal cruelty statute for neglecting several horses she and her boyfriend kept on the property of the latter's father. *Id.* at 116. The challenged statute permitted the arrest and prosecution of any person who, "with criminal negligence" failed to care for an animal. *Id.* The court recognized that Alaska, like Alabama, did not statutorily define who owed the animals contemplated a duty and who, therefore, could be held criminally liable for neglect. *Id.* at 117. But the court reasoned the common law supplied the basis for that duty and, in accordance with that duty, defined the person contemplated in the statute–an animal's owner or someone who'd assumed a duty to it. *Id.* at 118. The court affirmed Sickel's conviction based on its conclusion that she'd assumed a duty of care to the neglected horses and affirmed the statute's constitutionality. *Sickel*, 363 P.3d at 118.

Just like the statute analyzed in *Sickel*, § 241(b) doesn't permit the arrest and prosecution of just any person for not taking an animal to a veterinarian. On the contrary, only an animal's owner or someone who assumed a duty to it may face criminal liability for that omission under § 241(b). While Wade may feel upset that officers mistakenly believed she owned the puppies or had assumed a duty of care to them, that doesn't matter here since the law's text is clear. *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1334 (M.D. Ala. 2019). Nor is it of any moment that Speegle and others didn't investigate Wade's claim of innocence or credit her account of the puppies' condition and her lack of ownership. *Cf. Boyette v. Adams,* 2021 WL 6754285, at *6 (N.D. Ala. Dec. 28, 2021), *aff'd,* 2022 WL 7296567 (11th Cir. Oct. 13, 2022) ("While officers aren't required to perform error-free investigations they're not obliged to independently investigate every proffered innocence claim.") (citations omitted). Instead, what matters is the law's clarity. And here, there's no question that § 241(b) won't snatch-up innocent people for prosecution.

### 2.    Other portions of Article 11 show the Legislature limited § 241(b)'s applicability.

When a court sets out to resolve a vagueness challenge, it must look at the challenged statute's text and determine whether it defines "plainly perceivable boundaries" by reading it in accordance with customary canons of construction. *U.S. v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010); *Abrams v. Ciba Specialty Chemicals Corp.*, 659 F. Supp. 2d 1225, 1236 (S.D. Ala. 2009) (collecting authorities). Reading

15

other sections of Article 11 along with § 241(b) consistent with a commonly employed canon of construction shows Wade's vagueness challenge holds no merit.

The relevant canon here commands courts to look at a challenged statute's language, design, object, and policy to determine its meaning. *Crandon v. United States*, 494 U.S. 152, 158 (1990); *Alvarado v. U.S. Atty. Gen.,* 610 F.3d 1311, 1316 (11th Cir. 2010) ("When interpreting a statute, we do not analyze a particular clause in isolation, [] we must consider it in light of the entire statute. [W]e look not only to plain meaning of the statute, but also its design, object, and policy.") (citations omitted). This canon shares similarities with the "whole text canon," which requires "judicial interpreter[s] [to] consider the entire text, in view of its structure and the physical and logical relation of its may parts when interpreting any particular part of the text." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) (cleaned up). The language, design, and policy objective of the act in which § 241(b) was passed show that only a dog's owner or someone who's taken on a duty to care for it could be held liable for failing to get it necessary medical care.

As explained in Section II above, the Alabama Legislature enacted § 241(b) as part of a comprehensive plan to establish crimes and penalties for animal cruelty. The bill featured, among its several provisions, a section that became codified as ALA. CODE § 13-A-11-243. In accordance with § 243, law enforcement officers (and other authorized agents) received the authority to immediately redress perceived

neglect. Officers who "reasonabl[y] belie[ve] [or have] evidence of, or [who] found a dog or cat to be neglected or cruelly treated" may remove the animal from its current location or "[o]rder the owner of the dog [] to provide certain care to the dog [] at the owner's expense without the removal of the dog[.]" ALA. CODE § 13A-11-243(a). Put simply, the Legislature granted police (and others) the ability to immediately confiscate a neglected animal, or, if the animal was in its owner's possession, allow the dog to remain and order the owner to take immediate remedial action. By enumerating (and limiting) the class of persons law enforcement can order to redress instances of neglect, § 243 shows precisely *who* § 241 targets: people charged with caring for animals. Other provisions in Article 11 reaffirm this conclusion. *E.g.,* ALA. CODE §§ 13A-11-244(a), (b) (owners entitled to notice of a hearing to determine fitness for continued possession of confiscated animal); -245(d) (court may enjoin owner from future possession of confiscated animal and order confiscation of other animals and enjoin possession of the same).

In short, §241(b) contemplates that only someone who owes a duty to an animal could be prosecuted for failing to get it necessary medical care. Section 241(b), moreover, notifies the public of the offense conduct for which its members could face prosecution and provides clear guidance to law enforcement. This suffices for constitutional definiteness.

17

## V.    Conclusion

The analysis above plainly shows ALA. CODE § 13A-11-241 doesn't suffer from unconstitutional vagueness. On the contrary, its subsections, read alone or in conjunction with other provisions in Alabama's Criminal Code, show a person shouldn't be arrested and prosecuted for cruelty to a strange dog simply because she doesn't help it or lacks the financial means to get it to a veterinarian. Wade's allegations find no support in the statute's text and her position does nothing to rebut the presumption of constitutionality the law enjoys.   Accordingly, the Attorney General asks the Court to dismiss her challenge.

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Scott Woodard
Scott Woodard (ASB-1001-F94C)
    *Assistant Attorney General*
Jim Davis (ASB-4063-I58J)
    *Deputy Attorney General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130-0152
Tel: (334) 242-7300
Fax: (334) 353-8400
Scott.Woodard@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov